```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```
DOROTHY NESKE and CHRISTOPHER NESKE, as Parents and Natural Guardians of A.N., and DOROTHY NESKE and CHRISTOPHER NESKE, Individually,

          Plaintiffs,

-against-

DAVID C. BANKS, in his Official Capacity, as the Chancellor of the New York City Department of Education, and the NEW YORK CITY DEPARTMENT OF EDUCATION,

          Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _03/26/2024_

22 Civ. 6946 (AT)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiffs, Dorothy Neske and Christopher Neske, individually and as parents and guardians of A.N., a minor child, bring this action against Defendants, the New York City Department of Education and its chancellor David Banks (collectively, the "DOE"), pursuant to the Individuals with Disabilities in Education Act (the "IDEA"), 20 U.S.C. § 1401 *et seq.* Plaintiffs seek review of the April 15, 2022 decision of New York State Review Officer Justyn P. Bates (the "SRO") affirming in part and reversing in part the January 23, 2022 decision of Impartial Hearing Officer Sharyn Finkelstein (the "IHO").

    The parties both move for summary judgment. Pl. Mot., ECF No. 30; Def. Mot., ECF No. 35. For the reasons stated below, Plaintiffs' motion is DENIED, and Defendants' motion is GRANTED.

## BACKGROUND

**I.**     <u>Statutory Framework</u>

    The IDEA requires each state to provide disabled children with a free and appropriate public education ("FAPE"). *R.E. v. N.Y.C. Dep't of Educ.*, 694 F.3d 167, 174–75 (2d Cir. 2012). School districts are required to create an individualized educational program ("IEP") for each disabled child.

*Id.* at 175 (citing 20 U.S.C. § 1414(d)).  An IEP "sets out the child's present educational performance, establishes annual and short-term objectives for improvements in that performance, and describes the specially designed instruction and services that will enable the child to meet those objectives." *L.O. v. N.Y.C. Dep't of Educ.*, 822 F.3d 95, 102–03 (2d Cir. 2016) (quoting *R.E.*, 694 F.3d at 175).  In New York City, the DOE creates an IEP through a local committee on special education ("CSE"). *See* N.Y. Educ. Law § 4402(1)(b)(1).

If a parent believes that the DOE has failed to provide their child with a FAPE, the parent may file a due process complaint ("DPC"). *M.O. v. N.Y.C. Dep't of Educ.*, 793 F.3d 236, 239 (2d Cir. 2015) (per curiam) (quoting *Hardison v. Bd. of Educ.*, 773 F.3d 372, 376 (2d Cir. 2014)).  A DPC initiates administrative proceedings, including a hearing before an IHO. *R.E.*, 694 F.3d at 175 (citing N.Y. Educ. Law § 4404(1)).  After an IHO has issued a decision, either party may appeal that decision to the SRO. *Id.* (citing N.Y. Educ. Law § 4404(2)).  After an SRO reaches a final administrative decision, either party may seek review by bringing a civil action in state or federal court. *Id.* (citing 20 U.S.C. § 1415(i)(2)(A)).

Parents who disagree with their child's proposed IEP may unilaterally withdraw the child from public school and place them in private school. *Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter*, 510 U.S. 7, 9–10 (1993); *Sch. Comm. of Burlington v. Dep't of Educ. of Mass.*, 471 U.S. 359, 374–75 (1985).  The parents may then "seek tuition reimbursement from the school district" through a DPC. *M.O.*, 793 F.3d at 239 (quoting *Hardison*, 773 F.3d at 376).  If a district court finds that "private placement desired by the parents was proper under [the IDEA] and that an IEP calling for placement in a public school was inappropriate," school authorities must retroactively reimburse the parents for the cost of the private school's tuition. *Burlington*, 471 U.S. at 370; *see Carter*, 510 U.S. at 10.

The *Burlington/Carter* test governs claims seeking reimbursement of tuition and certain school-related services under the IDEA. *See C.F. v. N.Y.C. Dep't of Educ.*, 746 F.3d 68, 76 (2d Cir. 2014); *see also Mendez v. Banks*, 65 F.4th 56, 59 (2d Cir. 2023). Under the *Burlington/Carter* test, a district court may order reimbursement if (1) the school district's proposed plan would not provide the child with an FAPE, (2) the parents' alternative private placement was appropriate, and (3) equitable considerations favor reimbursement. *T.M. v. Cornwall Cent. Sch. Dist.* 752 F.3d 145, 152 (2d Cir. 2014); *Neske v. N.Y.C. Dep't of Educ.*, No. 22-2962, 2023 WL 8888586, at *1 (2d Cir. Dec. 26, 2023) (summary order). "DOE bears the burden of establishing the initial prong, while the student's parents bear the burden on the second and third prongs." *Zayas v. Banks*, No. 22 Civ. 7112, 2024 WL 216761, at *5 (S.D.N.Y. Jan. 19, 2024) (citing *R.E.*, 694 F.3d at 184–85). "If the challenged IEP was adequate, the state has satisfied its obligations under the IDEA" and the inquiry ends. *M.C. v. Voluntown Bd. of Educ.*, 226 F.3d 60, 66 (2d Cir. 2000). Only if the Court finds a challenged IEP "inadequate should it proceed to the second question." *Id.*

II.     Factual Background[1]

A.N., who turned twelve years old during the 2021-22 school year, has a traumatic brain injury. Pl. 56.1 ¶¶ 2–3, ECF No. 37. A.N. has been diagnosed with quadriplegic cerebral palsy with dystonia caused by bilateral brain bleed grade III with periventricular leukomalacia, infantile spasms, seizure disorder, and gastroesophageal reflux disease. *Id.* ¶ 4. A.N. is "non-ambulatory and non-verbal and has highly intensive management needs." *Id.* ¶ 5. A.N. has "severe global impairments that adversely affect his fine and gross motor skills, cognition, memory, attention, reasoning, abstract

---

[1] The facts in this section are taken from the parties' Rule 56.1 statements, responses, and declarations, unless otherwise noted. Disputed facts are so noted. Citations to a paragraph in a Rule 56.1 statement also include the opposing party's response. The Rule 56.1 statements cite to the certified administrative record filed at ECF No. 22.

thinking, information processing, speech and language, and daily living skills, which in turn adversely affect his educational abilities." *Id.* ¶ 8.

After a March 9, 2021 CSE meeting, an IEP for A.N. was developed for the 2021-22 school year. *Id.* ¶¶ 12–13. DOE designated A.N. to attend P.S. 37. Def. 56.1 ¶ 4, ECF No. 41. On June 23, 2021, Plaintiffs notified DOE that they intended to "unilaterally place [A.N.] at iBrain."[2] *Id.* ¶ 5.

On July 7, 2021, Plaintiffs filed a DPC, alleging that DOE failed to provide A.N. with an FAPE. Pl. 56.1 ¶ 14. Specifically, Plaintiffs argued that the IEP (1) lacked music therapy, (2) failed to provide individual parent counseling, (3) did not include an extended school day, (4) did not provide assistive technology, and (5) included a proposed school location that was not safe or appropriate for A.N. *Id.* ¶¶ 15–17; Def. 56.1 ¶ 7.

Following a hearing, the IHO issued a findings of fact and decision on January 23, 2022 (the "IHO Order"). Pl. 56.1 ¶ 20. The IHO found that the DOE had provided A.N. with an FAPE for the 2021-22 school year under *Burlington/Carter* prong one. *Id.* ¶ 21(e). The IHO continued her analysis and found that the parents had met their burdens on *Burlington/Carter* prongs two and three. *Id.* ¶ 21(f), (g). Finally, in an exercise of discretion, the IHO ordered DOE to reimburse Plaintiffs for the cost of A.N.'s assistive technology device. *Id.* ¶ 21(h). Both Plaintiffs and Defendants appealed to the Office of State Review. *Id.* ¶ 22.

By order dated April 15, 2022 (the "SRO Order"), the SRO affirmed the IHO's determination that DOE had offered A.N. an FAPE for the 2021-22 school year. Def. 56.1 ¶ 9. The SRO reversed the IHO Order only as to reimbursement for the assistive technology device, stating that this was "inappropriate . . . where the parents had already engaged in self-help . . . [and] reject[ed] the district's proposed March 2021 IEP." Pl. 56.1 ¶ 28.

---

[2] iBrain is a private school located in Manhattan that operates under the full name "the International Institute for the Brain." *Neske.*, 824 F. App'x at 81.

4

On August 15, 2022, Plaintiffs commenced this action, seeking reimbursement of iBrain's tuition for the 2021-22 school year and for the assistive technology device they purchased. Compl. at 15–16, ECF No. 1.

## LEGAL STANDARD

Although the parties have filed motions for summary judgment, the "procedure is in substance an appeal from an administrative determination, not a summary judgment [motion]." *M.H. v. N.Y.C. Dep't of Educ.*, 685 F.3d 217, 226 (2d Cir. 2012) (quoting *Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ.*, 397 F.3d 77, 83 n.3 (2d Cir. 2005)) (alteration in original). In an IDEA case, a motion for summary judgment "serves as a pragmatic procedural mechanism for reviewing a state's compliance" with the IDEA. *Id.* at 225–26 (quoting *Lillbask*, 397 F.3d at 83 n.3). The Court "must base its decision on the preponderance of the evidence." *R.E.*, 694 F.3d at 184.

Still, the Court "must give 'due weight' to [administrative] proceedings, mindful that the judiciary generally 'lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational policy.'" *M.H.*, 685 F.3d at 240 (quoting *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 113 (2d Cir. 2007)). "[C]ourts may not 'substitute their own notions of sound educational policy for those of the school authorities which they review.'" *T.Y. v. N.Y.C. Dep't of Educ.*, 584 F.3d 412, 417 (2d Cir. 2009) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 206 (1982)). Therefore, "the role of federal courts in reviewing state educational decisions under the IDEA is 'circumscribed.'" *M.H.*, 685 F.3d at 240 (quoting *Gagliardo*, 489 F.3d at 112).

"[W]here the SRO and IHO agree, deference to the conclusions of the administrators on this issue is particularly appropriate." *S.K. v. City Sch. Dist. of City of N.Y.*, No. 17 Civ. 6043, 2020 WL 1244473, at *11 (S.D.N.Y. Mar. 13, 2020) (citation omitted). Where the IHO and SRO reach conflicting conclusions, "reviewing courts . . . must defer to the reasoned conclusions of the SRO as the final state administrative determination." *M.H.*, 685 F.3d at 246. The degree of deference

depends on both the quality of the decisions and the nature of issue at hand. *See C.F*, 746 F.3d at 77. "Deference is particularly appropriate when the state officer's review 'has been thorough and careful.'" *R.E.*, 694 F.3d at 184 (citation omitted). Greater "deference is also appropriate when reviewing the SRO's determination of the substantive adequacy of an IEP and appropriate educational methodologies [rather] than on determinations about the propriety of the procedures by which an IEP was developed." *Thomason v. Porter*, No. 21 Civ. 6713, 2023 WL 1966207, at *7 (S.D.N.Y. Feb. 13, 2023). However, a court need not defer to administrative decisions on matters of law. *See Lillbask*, 397 F.3d at 82.

## DISCUSSION

Plaintiffs contend that the SRO Order erred in determining that the DOE could provide A.N. with an FAPE under *Burlington/Carter* prong one. Specifically, Plaintiffs contend that the proposed IEP was substantively inadequate because it (1) omitted music therapy, (2) did not include an extended school day, and (3) proposed placing A.N. in classes at P.S. 37 that were inappropriate. Pl. Mem. at 9–22, ECF No. 31.

As a preliminary matter, the Court must determine the level of deference owed to the administrative decisions. The SRO here issued a twenty-six-page, single-spaced decision in which he reviewed the IHO Order, cited various appropriate facts in the record, and reasonably applied the law. Certified Administrative Record ("C.A.R.") at 6–32, ECF No. 22;[3] *see Zayas*, 2024 WL 216761, at *6 ("Deference is particularly appropriate when, as here, the SRO's review has been thorough and careful." (cleaned up)). Moreover, the IHO and SRO Orders agree that the DOE has met its burden on the first prong, and their "unanimity makes deference 'particularly apt.'" *Rivas v. Banks*, No. 22 Civ. 10007, 2023 WL 8188069, at *7 (S.D.N.Y. Nov. 27, 2023) (citation omitted). And, Plaintiffs

---

[3] The C.A.R. was filed under seal at ECF No. 22. Pages 1 to 219 of the C.A.R. are available at ECF No. 22; pages 220 to 867 are available at ECF No. 22-1; and pages 868 to 1009 are available at ECF No. 22-2. Throughout this order, the Court refers to the page numbers at the bottom of the C.A.R. and does not specify the particular docket entry.

challenge "the sufficiency of goals and strategies in an IEP," which is "precisely the type of issue upon which the IDEA requires deference to the expertise of the administrative officers." *L.O.*, 822 F.3d at 118 (cleaned up).  Accordingly, both the IHO and the SRO are owed substantial deference as to each of the conclusions that Plaintiffs challenge.

First, Plaintiffs contend that the IEP was inadequate because it did not recommend music therapy as an essential related service for A.N.  Music therapy, according to the testimony of iBrain's director of special education services, helps students with cerebral palsy to move and is "really motivating," particularly for students who have "a harder time trying to process and understand language."  Pl. Opp. at 2, ECF No. 40; *see* C.A.R. at 336–38.

But, the SRO's view that music therapy was not necessary to offer A.N. an FAPE is entitled to considerable deference.  *See Rivas*, 2023 WL 8188069, at *7; *Zayas*, 2024 WL 216761, at 10–11.  And, the record does not undermine the SRO's conclusion.  The DOE's school psychologist testified that other related services, including occupational therapy, permitted the IEP to incorporate the benefits of music therapy, which "were to help strengthen the student's upper extremities, [] to improve his expressive language, and to help him with interpersonal interactions."  C.A.R. at 468–69.  And, the IEP noted that A.N. became "extremely happy and excited in the presence of live music" and sometimes "need[ed] extra live musical support."  *Id.* at 721–22.  The school psychologist testified that music "was incorporated into his management needs," as well as the curriculum.  *Id.* at 468; *id.* at 729; *see N.K. v. N.Y.C. Dep't of Educ.*, 961 F. Supp. 2d 577, 592–93 (S.D.N.Y. 2013) (holding that "music therapy is not necessary to provide" an FAPE, when the IEP "does recommend that [the student] have access to music throughout the day" (cleaned up)).  Ultimately, the IDEA "does not require a school district to furnish every special service required necessary to maximize each handicapped child's potential."  *D.B. v. Ithaca City Sch. Dist.*, 690 F. App'x 778, 783 (2d Cir.

2017) (quotation marks and citation omitted). Accordingly, the Court rejects Plaintiffs' contention that the omission of music therapy deprived A.N. of an FAPE.

Second, Plaintiffs argue that, because the IEP included seventeen hours of related services per week and required thirty-five periods of special education, Defendants could not implement the IEP without an extended school day, which the IEP did not include. "[C]hallenges to a school district's proposed placement school must be evaluated prospectively (i.e., at the time of the parents' placement decision) and cannot be based on mere speculation." *M.O.*, 793 F.3d at 244 (internal quotation marks and citation omitted). "While it is speculative to conclude that a school with the capacity to implement a given student's IEP will simply fail to adhere to that plan's mandates, . . . it is not speculative to find that an IEP cannot be implemented at a proposed school that lacks the services required by the IEP." *Id.*

The SRO determined that Plaintiffs' challenge was impermissibly speculative. C.A.R. at 24–25. The Court agrees. The IEP recommended that the majority of A.N.'s related services be conducted on a "push-in" basis: in other words, rather than pulling the child out of the classroom, the services would be provided in the classroom. *See id.* at 723 ("The CSE Team recognizes that the majority of the related service sessions should be push-in so that [A.N.] can work towards his academic goals. However, when new skills are introduced or if a session mandates a separate location, pull-out services are recommended."). In their memorandum of law, Plaintiffs concede that it was mathematically possible for DOE to implement the IEP—without an extended school day—with most of the services delivered on such a "push-in" basis. Pl. Mem. at 13–14. Plaintiffs' argument, then, amounts to speculation that the school would "simply fail to adhere to that [IEP]'s

8

mandates," which is not a permissible basis to challenge an IEP. *M.O.*, 793 F.3d at 244.[4]

Third, Plaintiffs argue that P.S. 37 would have grouped A.N. with students that would not have been appropriate for his development, specifically pointing to P.S. 37's enrollment of children on the autism spectrum. "[T]he IDEA does not provide a parent with veto power over a student's classroom or classmates . . . or prohibit the grouping of students with autism with students with intellectual disabilities." *M.S. v. N.Y.C. Dep't of Educ.*, 2 F. Supp. 3d 311, 332 n.10 (E.D.N.Y. 2013) (citation omitted). Plaintiffs point to the testimony of iBrain's director of special education, who said that children at the "more severe end of the [autism] spectrum typically don't have a strong interest in peers and peer interactions" and could "throw things or hit people." C.A.R. at 351–52. But, even these broad assertions do not foreclose the possibility that A.N. could be placed with other children— including children with autism—who have similar needs and do not pose any physical risk to him. Moreover, the SRO found that, because A.N. never attended the school and was not assigned a class, Plaintiffs' concerns about grouping were "entirely speculative." C.A.R. at 28. The Court agrees, and such a speculative challenge is "not an appropriate basis for unilateral placement." *R.E.*, 694 F.3d at 195.

Accordingly, the Court shall not disturb the SRO and IHO's determinations that DOE's proposed plan would have provided A.N. with an FAPE, and DOE has met its burden at *Burlington/Carter* prong one. The Court need not proceed to the other prongs of the test. *See J.M. v. N.Y.C. Dep't of Educ.*, 171 F. Supp. 3d 236, 253 (S.D.N.Y. 2016).

Plaintiffs also seek reimbursement for the assistive technology device that they purchased; the IHO ordered such reimbursement, and the SRO reversed. The SRO Order is correct. Reimbursement

---

[4] Plaintiffs indicate that the provision of "push-in" services at such a degree could hinder A.N.'s education and fault DOE for not providing more specific numbers about how often related services would be provided on a "push-in" basis. Pl. Mem. at 13–14. But, the SRO found reasonable the CSE's determination not "to lock the provider into a set push-in, pull-out schedule." C.A.R. at 24–25. And, on such issues of educational methodologies, deference is particularly appropriate. *Thomason*, 2023 WL 1966207, at *7.

for related services is analyzed together with the parents' entitlement to tuition reimbursement. *See Mendez*, 65 F.4th at 59. Because the Court has found that the IEP would have provided A.N. with an FAPE, Plaintiffs do not have a right to reimbursement pursuant to *Burlington/Carter*.[5] *See Dervishi v. Stamford Bd. of Educ.*, No. 21 Civ. 1184, 2023 WL 2712610, at *15 (D. Conn. Mar. 30, 2023) (holding that plaintiff's "unilateral placement" precludes reimbursement for assistive technology where plaintiff did not demonstrate an FAPE denial).[6]

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED, and Plaintiffs' motion for summary judgment is DENIED. The Clerk of Court is directed to terminate the motions at ECF Nos. 30 and 35, enter judgment consistent with this order, and close the case.

SO ORDERED.

Dated: March 26, 2024
    New York, New York

_____
ANALISA TORRES
United States District Judge

---

[5] Plaintiffs do not argue that A.N.'s IEP omitted an assistive technology device and was, therefore, insufficient. Indeed, A.N.'s IEP included an assistive technology device, but Plaintiffs rejected the IEP. *See* Pl. 56.1 ¶ 13; C.A.R. at 747.

[6] Plaintiffs contend that "transportation and nursing services are routinely reimbursed whether or not the [] student is placed in private or public programming." Pl. Opp. at 15. Plaintiffs provide no support for this contention. To the extent that transportation services are reimbursed despite a unilateral placement, this generally is because the IDEA's pendency obligation requires such reimbursement. *E.g.*, *Donohue v. Banks*, No. 22 Civ. 8998, 2023 WL 6386014, at *8–9 (S.D.N.Y. Sept. 30, 2023); *accord Mendez*, 65 F.4th at 59. Plaintiffs do not bring any claim based on pendency in this action. *See* Compl. ¶¶ 103–18.